UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SOUTHERN FIDELITY MANAGING
AGENCY, LLC, et al.,

   Appellants,

v.                  Case No. 12-2702-JTM-DJW

CITIZENS BANK & TRUST COMPANY,

   Appellee.
_____

SOUTHERN FIDELITY MANAGING
AGENCY, LLC, et al.,

   Appellants,

v.                  Case No. 12-2707-JTM-DJW

CITIZENS BANK & TRUST COMPANY,

   Appellee.
_____

**REPORT AND RECOMMENDATION**

**NOTICE**

  Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), file written objections to this Report and Recommendation. A party must file any objections within the fourteen-day period if that party wants to have appellate review of the proposed findings of fact, conclusions of law, or recommended disposition. If no objections are timely filed, no appellate review will be allowed by any court.

1

**REPORT AND PROPOSED FINDINGS**

Appellants Southern Fidelity Managing Agency, LLC ("Southern Fidelity"), Northern Capital, Inc. ("Northern Capital"), Security First Insurance Holdings, LLC, and Security First Managers, LLC appeal the United States Bankruptcy Court's October 5, 2012 Opinion Determining Parties' Entitlement to Proceeds of FLAC Stock.[1] This interlocutory appeal arises from an adversary bankruptcy proceeding filed by Appellee Citizens Bank & Trust Company ("Citizens Bank"), who sought a declaratory judgment determining its priority rights to the proceeds from the sale of stock in First Life American Corporation ("FLAC"). The bankruptcy debtor, Brooke Capital Corporation ("BCC"), gave security interests in the FLAC stock to secure a loan from its subsidiary, Brook Capital Advisors, Inc. ("BCA"), and later gave a security interest in the stock as part of a workout agreement on a different loan to Citizens Bank. BCA subsequently sold participation interests in the loan secured by the FLAC stock to Appellants and Bank of Kansas. In the adversary proceeding, Citizens Bank and the holders of BCA's loan participation interests all claimed first priority rights in the FLAC stock.

On October 5, 2012, the bankruptcy court entered an order determining that Citizens Bank's claim to the proceeds of the sale of FLAC stock was superior to the claims of the Appellants, except for the 14.54% loan participation interest held by Bank of Kansas. The bankruptcy court found, *inter alia*, that Appellants' loan participation agreements, unlike the participation agreement entered by Bank of Kansas's predecessor, were not true participation agreements and recharacterized as them as loans to BCA. The bankruptcy court then concluded that because the participation certificates must be recharacterized as loans, the parties holding

---

[1] *In re Brooke Capital Corp.*, Bankr. No. 08-22789-7, Adversary No. 08-6132, 2012 WL 4793010 (Bankr. D. Kan. Oct. 5, 2012).

those certificates did not have a perfected security interests in the FLAC stock as they had not taken additional steps to perfect their interests.

On October 19, 2012, Security First Insurance Holdings, LLC; Security First Managers, LLC; and Bank of Kansas filed a notice of appeal to the Bankruptcy Appellate Panel ("BAP").[2] Southern Fidelity and Northern Capital filed their notice of appeal to the BAP the same day.[3] On October 23, 2012, an amended notice of appeal was filed that removed Bank of Kansas as an appellant. On October 26, 2012, Citizens Bank filed an election to have these appeals heard by the District Court pursuant to 28 U.S.C. § 158(c)(1)(B), and the two appeals were opened as Case Nos. 12-cv-2702 and 12-cv-2707. On October 31, 2012, Appellants filed Joint and Unopposed Motions for Leave to Appeal in their respective cases. The motions were granted and on November 13, 2012, the two appeals were consolidated with Case No. 12-cv-2702 designated as the lead case.

The Honorable J. Thomas Marten has referred the appeal in these consolidated cases to the undersigned Magistrate Judge for report and recommendation.

I.   **Relevant Background**

The transactions in question center on the following Brooke group of companies, which conducted business in the insurance industry: (1) Brooke Corporation; (2) Brooke Capital Corporation ("BCC"); (3) Brooke Capital Advisors, Inc. ("BCA"); (4) First Life American Corporation ("FLAC"); and (5) Brooke Credit Corporation, d/b/a Aleritas Capital Corporation ("Aleritas"). Brooke Corporation, the parent company, owned a majority of the shares in BCC

---

[2] B.A.P. Case No. KS-12-085.

[3] B.A.P. Case No. KS-12-086.

and Aleritas. Subsidiary BCC, in turn, wholly owned both BCA and FLAC. Several other parties including Appellants, Bank of Kansas, and Citizens Bank were involved in various transactions relevant to this appeal and will be discussed in relevant order.

### A. The BCA Loan

The bankruptcy debtor, BCC, obtained two loans that are at the foundation of the parties' dispute. Effective December 31, 2007, BCC obtained a loan from its subsidiary, BCA, in the amount of $12.4 million (hereinafter referred to as the "BCA Loan"). As security for the loan, BCC signed a "Commercial Loan Agreement" and "Stock Pledge and Security Agreement" giving BCA a security interest in 100% of its "right title and interest in" the FLAC stock, as well as other collateral. At some time prior to June 25, 2008, BCC delivered the FLAC stock certificate to BCA, which perfected BCA's security interest in the stock.

In the adversary proceeding, the bankruptcy court found it "more likely than not that the Commercial Loan Agreement documented a valid debt [BCC] owed to BCA" and that the "exhibits evidence[d] a loan from BCA to [BCC] of approximately $12 million, secured by a first priority lien in the FLAC stock and its proceeds."[4] The bankruptcy court also found in an earlier opinion denying Citizens Bank's motion for summary judgment that BCA's perfection by control of the FLAC stock had priority over Citizens Bank's later perfection.

### B. The Citizens Bank Loan

On the same day it executed the BCA Loan, BCC also obtained a $9 million loan from Citizens Bank (hereinafter referred to as the "Citizens Bank Loan"). At the time the loan was originated, it was secured by stock in affiliates of BCC, but not by the FLAC stock.

---

[4] Op. Determining Parties' Entitlement to Proceeds of FLAC Stock, Ex. A-30 to Br. of Appellants - Participants (ECF No. 11-1), at 39, 55.

### C. Participation Interests in BCA Loan

In March 2008, BCA began selling participation interests in the BCA Loan secured by the FLAC stock. In a Participation Agreement dated March 6, 2008, BCA sold a 14.54% share of the BCA Loan to First National Bank of Johnson County, the predecessor to Bank of Kansas, for $1.8 million. The Participation Agreement provided that the collateral for the BCA Loan included a pledge of 100% of BCC's interest in the FLAC stock, and that a "security interest in the collateral is assigned and sold to Purchasers . . . in proportion to each Purchaser's investment and is held by Seller for the benefit of Purchaser."

On March 28, 2008, BCA executed three documents labeled "Participation Certificate and Agreement" purporting to sell participation interests in the BCA Loan to Appellants Northern Capital, Southern Fidelity, and Security First Insurance Holdings, LLC ("Security First").[5] At the time they purchased these participation interests, Northern Capital, Southern Fidelity, and Security First each owed a large loan to the related Brook Corporation owned company, Aleritas. The Participation Certificates were executed on identical two-page forms and each stated that BCA was selling to one of the three "Purchasers," without recourse to BCA, shares of the BCA Loan. BCA transferred an (1) 8.07% interest in the BCA Loan to Northern Capital for $1 million; (2) a 40.4% interest to Security First for $5 million; and (3) a 24.22% interest to Southern Fidelity for $3 million. Each Participation Certificate included a section labeled "Loan Background Information" that described the BCA Loan. The Participation Certificates also provided that BCA agreed "to repurchase Purchaser's interest on or before June 30, 2008." The Certificates called for BCA to share any payments the debtor, BCC, made on the

---

[5] The original Participation Certificate listed "Security First Holdings, LLC," but the parties later amended the name to "Security First Insurance Holdings, LLC."

BCA Loan pro rata with the purchasers of the Participation Certificates. They also provided that the BCA Loan was secured by, among other things, 100% of the FLAC stock, and that BCA was assigning a proportionate share of its security interests to each purchaser of participation interests and would hold those shares for their benefit. Finally, the Participation Certificates provided that they are governed by the laws of Kansas.

In late June or early July 2008, BCA and Appellants Northern Capital, Southern Fidelity, and Security First signed addenda to the Participation Certificates, extending their participation interest repurchase date to September 30, 2008. The Security First Addendum was joined by Aleritas, who agreed "in the event of any default on the participation, or failure by [BCA] to repurchase the loan participation as contemplated by the Repurchase Provision, as amended, then the participation amount will be applied to principal and interest on [Security First's] current loan outstanding with Aleritas Capital."

Section 12 of Appellants' Participation Certificates, as well as the Bank of Kansas Participation Agreement, included the following provision about the administration of the BCA Loan:

> Seller will not, without Purchaser's written consent, reduce principal or interest with respect to the Loan or release or allow for the substitution of any Property, outside the normal course of dealing with Borrower so as to substantially reduce the possibility of repayment of the Loan. *Seller will not, without Purchaser's written consent, renew, extend or consent to the revision of the provisions of any note or security documents covered or waive any claim against Obligor*.[6]

Neither Appellants nor the Bank of Kansas filed a UCC financing statement to perfect any interest received under their respective participation agreements. Appellants and Bank of Kansas received payments on the BCA Loan through August 2008.

---

[6] Participation Certificate (ECF No. 11-3) at 2, (emphasis added).

### D. Citizens Bank Loan Workout Agreement

Shortly after the loan documents were executed, BCC defaulted on the Citizens Bank Loan, and BCC and Citizens Bank began workout discussions. On May 5, 2008, BCC's chairman sent a letter to Citizens Bank asking for flexibility regarding the May 31, 2008 maturity date of the Citizens Bank Loan. He stated that the previous plan for BCC to repay the loan from proceeds of the sale of Aleritas was no longer feasible. He advised Citizens Bank that BCC had a long-term loan with BCA, which was secured in part by the FLAC stock, and BCA had agreed to release its lien on the FLAC stock when it was sold so that the proceeds could be used to repay the Citizens Bank Loan. BCC later specified that BCA would release its lien on the FLAC stock when three things occurred: (1) the FLAC stock was sold; (2) Citizens Bank released its lien on BCC's stock; and (3) Brooke Corporation pledged BCC's shares as security for the BCA Loan to BCC.

Citizens Bank inquired to see if any creditors had a lien on BCC's assets, which would include the FLAC stock. If creditors did exist, Citizens Bank wanted to know whether those creditors had agreed to BCA's actions. BCC's chairman told Citizens Bank that BCA did not have a creditor with a lien on its assets that could encompass the FLAC shares held as security, and that BCC had no such creditor other than BCA. Apparently satisfied with BCC's response, Citizens Bank sent a letter to the parent company, Brooke Corporation, specifying the following conditions BCC must meet in order for Citizens Bank to grant BCC's requested loan extension: (1) BCA and BCC must agree that 100% of the FLAC stock sale proceeds would be used to repay the Citizens Bank Loan; (2) The FLAC stock must be pledged to Citizens Bank; and (3) the parent Brooke Corporation must agree to various financial adjustments for fees and expenses. General Counsel for Brooke Corporation accepted this offer on behalf of Brooke Corporation

and BCC in a letter dated June 20, 2008.

Several documents were signed to memorialize the parties' agreement, including an amended note, a security agreement and related UCC-1, a payment agreement, and an escrow agreement. On June 25, 2008, BCC and Citizens Bank signed a "Second Amendment to Promissory Note." This document included the following paragraph:

> [BCC and BCA] shall agree with [Citizens Bank], in a writing acceptable to the Bank (the 'Payment Agreement'), that all proceeds of any sale of any equity interests of assets of [FLAC] will be paid to the Bank to the extent necessary to pay all principal, interest and any other amounts that [the Debtor] then owes the Bank.

BCC also signed a "Security Agreement" dated June 25, 2008, giving Citizens Bank a security interest in all its personal property, including its FLAC stock, to secure all its obligations to Citizens Bank.

Citizens Bank also drafted a "Payment Agreement," which was signed by representatives of both BCC and BCA. It provided in relevant part:

> [I]f in connection with any sale or other disposition of any equity interest or assets of FLAC, [either BCC or BCA] is entitled to receive, directly or indirectly, any proceeds from such sale or disposition, [that company] shall pay such proceeds to [Citizens Bank] to the extent necessary to satisfy [BCC's debt to Citizens Bank].

Citizens Bank filed a UCC-1 financing statement in an effort to perfect the security interest in the FLAC stock on June 25, 2008.

Citizens Bank then requested that it be allowed to hold the FLAC stock in order to properly perfect its lien, but counsel for BCC stated that the participants on the BCA Loan would likely object to Citizens Bank holding the stock. At this point, Citizens Bank became aware of the loan participants. When Citizens Bank inquired regarding the impact of the participants on its rights, BCC's general counsel assured Citizens Bank that the participants would agree to the

substitution of collateral because it "frees up much collateral."

Citizens Bank and BCC then executed an "Escrow Agreement" on June 30, 2008, in which they appointed an escrow agent to accept possession of the FLAC stock certificate to perfect the security interest granted by BCC for the benefit of "First Lien Lender" BCA and "Second Lien Lender" Citizens Bank. The Escrow Agreement also stated that BCC has, "with First Lien Lender's consent, granted to Second Lien Lender a second priority security interest in the [FLAC stock]."

On July 9, 2008, BCC accepted an offer from a non-Brooke Company to buy all the FLAC shares for approximately $7.9 million. BCA's President and CEO sent a letter to the participants on July 19, 2008, informing them it had agreed to a request from BCC to substitute BCC shares as collateral in place of the FLAC shares, which would be sold for $7.9 million. The participants objected to the substitution and argued that under the participation agreements, BCA did not have the authority to unilaterally substitute collateral. As the sale never occurred, the issue was never resolved.

In the summer of 2008, the value of BCC's shares decreased more rapidly than the value of the FLAC shares. Eventually, the FLAC shares decreased in value to the point where the Brooke companies did not have enough cash to supplement the proceeds from the sale of the FLAC shares in order to pay the Citizens Bank Loan. Shortly thereafter in September 2008, a lawsuit was filed in federal district court against BCC and other related companies. In October 2008, the special master appointed to take control of BCC filed a Chapter 11 bankruptcy petition on behalf of BCC and subsequently served as the Chapter 11 trustee. Upon the trustee's motion, the FLAC stock was sold for $2.5 million. BCC's bankruptcy case was converted to a Chapter 7 proceeding in June 2009.

On November 14, 2008, Citizens Bank filed an adversary proceeding to determine the priority of claims to the FLAC stock. A trial on the merits was held on May 4–6, 2011. On October 5, 2012, the bankruptcy judge entered an Opinion Determining Parties' Entitlement to Proceeds of the FLAC stock. These appeals followed.

## II.  Jurisdiction

Pursuant to 28 U.S.C. § 158(a)(3), the Court exercises its discretion whether to grant leave to appeal an interlocutory order of the bankruptcy court. As required under that statute, the parties have obtained leave of court to proceed with their interlocutory appeals.[7]

## III.  Standard of Review

Federal Rule of Bankruptcy Procedure 8013 provides that "[o]n an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." It also sets forth the following standard for reviewing a bankruptcy court's factual findings: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."[8] Factual findings are clearly erroneous if they are either (1) "completely devoid of minimum evidentiary support displaying some hue of credibility," or (2) "bears no rational relationship to the supportive evidentiary data."[9]

While the district court must accept the factual findings of the bankruptcy court unless

---

[7] *See* Nov. 5, 2012 Order granting motion (ECF No. 7).
[8] Fed. R. Bankr. P. 8013.
[9] *In re Ford*, 492 F.3d 1148, 1154 (10th Cir. 2007).

they are clearly erroneous, the bankruptcy court's legal determinations are reviewed under a de novo standard.[10] On mixed questions of law and fact, the court reviews de novo any question that primarily involves the consideration of legal principles and applies the clearly erroneous standard if the mixed question is primarily a factual inquiry.[11]

## IV. Appellants' Alleged Errors in Bankruptcy Court's Decision

Appellants ask the Court to reverse and vacate the Bankruptcy Court's October 5, 2012 Opinion Determining Parties' Entitlement to Proceeds of FLAC Stock. Appellants assert that the bankruptcy court erred both as a matter of law and fact in denying priority to their claims to the FLAC stock. First, Appellants argue that the bankruptcy court erred in determining that as participants in the BCA Loan and having been assigned BCA's perfected security interest in the collateral for the loan, they were required to take independent steps to perfect that security interest, notwithstanding K.S.A. 84-9-310. Second, Appellants argue that the bankruptcy court erred in determining that BCA unconditionally agreed to subordinate its first lien position in the collateral for the BCA Loan to Citizens Bank's second lien position. It erred because the participation certificates prohibited BCA from agreeing to subordinate its position absent Appellants' written consent and the escrow agreement under which Citizens Bank's lien was perfected conditioned Citizens Bank's right to the collateral on payoff of the BCA Loan. Third, Appellants argue that the bankruptcy court erred in finding the participants were not subject to risk of loss from a default of the BCA Loan in recharacterizing their Participation Certificates as loans.

---

[10] *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399-400 (10th Cir. 1986).

[11] *In re Eufaula Indus. Auth.*, 266 B.R. 483, 488 (10th Cir. B.A.P. 2001).

**A. Whether the bankruptcy court erred in determining that Appellants were required to take independent steps to perfect their security interest in the BCA Loan collateral in light of K.S.A. 84-9-310(c).**

Appellants argue that the bankruptcy court erred by failing to recognize that after BCA's assignment of its perfected secured interest in the FLAC stock, Appellants, as assignees of that perfected security interest, did not need to do anything more to continue the perfected status. They point to K.S.A. 84-9-310(c), which provides that if a secured party assigns a perfected security interest, no filing is required to continue the perfected status against creditors of and transferees of the original debtor.

Appellee Citizens Bank argues that Appellants do not have perfected security interest in the FLAC stock because they did not purchase a true participation in the BCA Loan, but instead are merely unsecured creditors. It argues Appellants did not take any steps to perfect any security interest they may have had in the BCA Loan. Because the participations were loans to BCA, to secure those loans, the Appellants needed to take a security interest in an asset of BCA and then perfect. Citizens Bank argues that the Participation Certificates state that the "Property" in which the Appellants were granted a security interest was not the FLAC stock, but rather, BCA merely granted Appellants "a security interest in BCA's security interest" in the FLAC stock. According to Citizens Bank, whatever security interest BCA attempted to grant in the Participant Certificates, and whatever property it attempted to grant a security interest in, that security interest was not perfected by Appellants. Citizens Bank sums up its arguments as follows: BCC, the owner of the FLAC stock, did not sign a security agreement in favor of Appellants; Appellants did not have possession of the FLAC stock at any time; and Appellants did not file a financing statement against BCC or BCA.

Citizens Bank also disputes Appellants' contention that they stand in the shoes of BCA

with respect to BCA's perfected security interest in the FLAC stock. Citizens Bank argues that in a typical participation, the lead lender is the only secured party and only holders of true participation interests obtain the benefit of the lead lender's security interest and priority of payment. Because the bankruptcy court found Appellants did not hold true participation interests, they cannot not obtain the benefits of BCA's security interest and priority of payment with respect to the FLAC stock and are only unsecured creditors of BCA.

In this case, the bankruptcy court found that Appellants were not "true" loan participants, and were thus not entitled to rely on BCA's perfection of its security interests in the FLAC stock to protect their own interests. Because they "took no steps on their own to perfect their interests in the FLAC stock . . . [they were] not holders of perfected security interests in the FLAC proceeds granted to them by BCA."[12] The bankruptcy court did not address or discuss K.S.A. 84-9-310(c) in its opinion.

Although it found Appellants did not hold a "true" participation interest in the BCA Loan, the bankruptcy court did find that participant Bank of Kansas held a "true" participation interest. As Bank of Kansas held a "true" participation interest, the bankruptcy court concluded that Bank of Kansas was allowed to rely on BCA's perfection of its security interest in the FLAC stock and BCA could not validly subordinate that interest to Citizens Bank's claim. The bankruptcy court found that Bank of Kansas—as holder of a "true" participation interest—had standing to enforce its rights against the property of the underlying borrower. Distinguishing the Tenth Circuit's 1984 decision in *Hibernia National Bank v. FDIC*,[13] the bankruptcy court held

---

[12] Op. Determining Parties' Entitlement to Proceeds of FLAC Stock, Ex. A-30 to Br. of Appellants - Participants (ECF No. 11-1), at 67.

[13] 733 F.2d 1403, 1407 (10th Cir. 1984).

that "in the context of the bankruptcy of the underlying borrower [as opposed to the lead bank], the loan participant should have a direct claim in bankruptcy and not be relegated to pursing the lead lender." The bankruptcy court noted that the BCC (the underlying borrower) and BCA (the lead bank) had declined to assert any claim to the FLAC stock proceeds.

Reviewing the bankruptcy court's conclusions of law de novo, the Court disagrees with the bankruptcy court's legal conclusion that Appellants, as holders of Participation Certificates recharacterized as loans, were not entitled to rely on the lead lender's perfection of its security interest, but were required to take additional steps to perfect their interests in the FLAC stock. The Court determines that this legal conclusion is inconsistent with K.S.A. 84-9-310(c), which provides that "[i]f a secured party assigns a perfected security interest . . . a filing under this article is not required to continue the perfected status of the security interest against creditors of and transferees from the original debtor."[14]

In this case, the loan BCA made to the debtor, BCC, was secured by the FLAC stock as collateral. BCA had perfected its security interest in the FLAC stock by taking possession of the stock certificate from the debtor, BCC. BCA then *assigned* that perfected security interest to Appellants under the terms of the Participation Certificates. Section 7 of the Participation Certificates assigns BCA's security interest in the identified "Property" to Appellants as follows:

> A security interest in the Property is assigned and sold to Purchaser, subject to
> other provisions within this Agreement, in proportion to Purchaser's Investment

---

[14] Although Appellants do not argue their security interests were automatically perfected under K.S.A. 84-9-309(2), the Court notes that this statute provides that "an assignment of accounts or payment intangibles which does not by itself or in conjunction with other assignments to the same assignee transfer a significant part of the assignor's outstanding accounts or payment intangibles" is perfected when they attach.

14

and is held by Seller for the benefit of the Purchaser.[15]

BCA obtained its security interest in the FLAC stock from the Commercial Loan Agreement executed between BCA and BCC. That Agreement allowed BCA to assign all or any portion of its rights:

> Lender [BCA] may assign all or any portion of its rights and delegate all or any portion of its obligations under this Agreement in whole or in part to another person without the consent of Borrower [BCC]. In the case of an assignment authorized under this subsection 8.1, the assignee shall have, to the extent of such assignment, the same rights, benefits and obligations as it would if it were a Lender hereunder . . . Borrower hereby acknowledges and agrees that any assignment will give rise to a direct obligation of Borrower to the assignee and that the assignee shall be considered to be a "Lender."[16]

With regard to Citizens Bank's argument that Appellants did not receive a security interest in the FLAC stock, the bankruptcy court previously found Appellants received a security interest from BCA under the terms of the Participation Certificates. In its January 20, 2011 Opinion Denying Summary Judgment, the bankruptcy court found that Appellants "received at least a security interest from BCA" because the Participation Certificates "clearly 'provide[d] for' transfers to them of shares of, or perhaps security interests in, BCA's security interests in the collateral securing the loan to [BCC]."[17] The bankruptcy court, however, later stated in its Opinion Determining Parties' Entitlement to Proceeds of FLAC Stock that "it was making no ruling about the specific property in which the three holders of the Participation Certificates were

---

[15] Participation Certificates, Exs. A-129, A-134, and A-151 to Br. of Appellants - Participants (ECF No. 11-2) at 20, 25 (ECF No. 11-3) at 1.

[16] BCA-BCC Commercial Loan Agreement, Ex. A-72 to Br. of Appellants - Participants (ECF No. 11-1) at 103.

[17] Op. Den. Summ. J., Ex. A-1 to Br. of Appellants - Participants (ECF No. 11-1) at 21.

15

granted security interests under the recharacterized certificates."[18]

Although the bankruptcy court made no ruling about the specific property in which BCA granted Appellants a security interest, a review of the Participation Certificates shows that they provide that a security interest in the "Property" that was assigned and sold to Appellants. The Certificates describe "Property" as including a "Pledge of 100% stock of FLAC." The bankruptcy court's recharacterization of the Participation Certificates from true participation interests to loans does not change or render invalid these provisions of the Participation Certificates.

Because BCA assigned its perfected security interest in the FLAC stock to Appellants under the Participation Certificates, under K.S.A. 84-9-310(c) Appellants were not required to file to continue the perfected status of the security interest against creditors of and transferees from BCC (the original debtor). The recharacterization of Appellants' Participation Certificates as loans by the bankruptcy court does not make the Kansas statute governing the assignment of perfected security interests inapplicable.

As a result, under Kansas law, Appellants did not need to take additional steps to continue the already perfected security interest in the FLAC stock assigned to them by BCA, and they would have superior priority to the proceeds of the sale of the FLAC stock over that of Citizens Bank and similar to that of Bank of Kansas, whom the bankruptcy court found had a perfected security interest in the stock under its Participation Agreement.

---

[18] Op. Determining Parties' Entitlement to Proceeds of FLAC Stock, Ex. A-30 to Br. of Appellants - Participants (ECF No. 11-1) at 67, n.25.

**B. Whether the bankruptcy court erred in finding BCA unconditionally agreed to subordinate its first lien position in the collateral for the BCA Loan to Citizens Bank's second lien position.**

Appellants also argue that the bankruptcy court erred in determining that BCA unconditionally agreed to subordinate its first lien position in the BCA Loan collateral to Citizens Bank's second lien position. They point out that the Participation Certificates prohibited BCA from doing so absent their written consent and the escrow agreement under which Citizens Bank's lien was perfected conditioned Citizens Bank's right to the collateral on the payoff of the BCA Loan.

Citizens Bank argues that the bankruptcy court correctly held that whether BCA could subordinate its interests in the FLAC stock was a moot issue as the bankruptcy court correctly determined that Appellants had nothing more than an unperfected security interest.

In its opinion, the bankruptcy court found the Payment Agreement between Citizens Bank and BCC was "in effect a subordination agreement, under which BCA agreed upon the sale of the FLAC stock to subordinate its first lien in the proceeds to Citizens' second lien in the same collateral." The bankruptcy court then found whether Appellants' Participant Certificates impacted BCA's freedom to subordinate its interests in the FLAC stock was a moot issue. It based this upon its conclusion that Appellants had at most an unperfected security interest in the FLAC stock, which this Court finds to be contrary to K.S.A. 84-9-310(c).

As the bankruptcy court erred in concluding that Appellants were required to take independent steps to continue the perfected status of the security interest assigned to them by BCA in the FLAC stock, its finding as moot the issue of whether BCA could subordinate its interests in the FLAC stock was also erroneous. Under the terms of the Participation Certificates, BCA could not—without the written consent of Appellants—consent to BCC's grant of a second

17

priority security interest in the FLAC stock to Citizens Bank or subordinate its security interest in the FLAC stock. As provided in Section 12 of Appellants' Participation Certificates, BCA, as the seller of participation rights in the BCA Loan, agreed that it "will not, without [Appellants'] written consent, renew, extend or consent to the revision of the provisions of any note or security documents covered or waive any claim against [BCC]." Because BCA never obtained Appellants' written consent, BCA was contractually prohibited from agreeing to BCC's request to grant Citizens Bank a second priority security interest in the FLAC stock. Absent the written consent of Appellants, BCA also could not subrogate its first lien position in the proceeds to Citizens Bank's second lien in the same collateral. The bankruptcy court thus erred in finding as moot the issue of whether BCA could subordinate its security interest in the FLAC stock.

### C. Remaining Alleged Error

Appellants assert one additional point of error in their briefing. They assert that the bankruptcy court erred in finding Appellants were not subject to risk of loss from a default of the BCA Loan in recharacterizing the Participation Certificates as loans. As the Court agrees with Appellants that the bankruptcy court erred in its legal conclusion that Appellants were legally required to take independent steps to continue the perfected status of the security interest assigned to them by BCA in the FLAC stock and in finding as moot the issue of whether BCA could subordinate its security interest in the FLAC stock, the Court need not address Appellants' remaining point raised on appeal.

### V. Conclusion

The Court recommends that the bankruptcy court's Opinion Determining Parties' Entitlement to Proceeds of FLAC Stock be reversed and remanded. The bankruptcy court erred

in not considering K.S.A. 84-9-310(c) in reaching its legal conclusion that Appellants, as holders of loan participation certificates which have been recharacterized as loans, are not entitled to rely on the lead lender's perfection of the security interest in the FLAC stock, but were legally required to take additional steps to perfect their assigned interests in that stock. The bankruptcy court also erred in finding as moot the issue of whether BCA could subordinate its security interest in the FLAC stock.

**IT IS THEREFORE RECOMMENDED** that the bankruptcy court's October 5, 2012 Opinion Determining Parties' Entitlement to Proceeds of FLAC Stock be **reversed and remanded**. The Court recommends that the matter be reversed and remanded back to the bankruptcy court for an order redistributing the proceeds from the sale of the FLAC stock in accordance with K.S.A. 84-9-310(c), which provides that assignees of a perfected security interest do not need to take additional steps to continue the perfected security interest assigned to them against creditors of or transferees from the original debtor.

Copies of this recommendation and report shall be served electronically upon counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed. R. Civ. P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within fourteen (14) days after being served with a copy.

Dated this 3rd day of September, 2013, at Kansas City, Kansas.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge